PULLMAN, COMLEY, BRADLEY AND REEVES *v.*
TUCK-IT-AWAY, BRIDGEPORT, INC., ET AL.
(10649)

DALY, O'CONNELL and FREEDMAN, Js.

Argued June 10—decision released August 4, 1992

*Alexander H. Schwartz,* with whom, on the brief, was
*Stephen M. Moore,* for the appellant (defendant Vest-
pro Corporation).

*William J. Wenzel,* with whom, on the brief, was
*John C. Bombara,* for the appellee (named defendant).

FREEDMAN, J. In this interpleader action,[1] the
defendant, Vestpro Corporation, appeals from the judg-

---

[1] This action was commenced by the plaintiff, Pullman, Comley, Bradley
and Reeves, as the holder of a $100,000 escrow deposit made by Vestpro

ment of the trial court awarding the other defendant, Tuck-it-away, Bridgeport, Inc., $100,000 as liquidated damages for Vestpro's default under the terms of a contract for the sale of real property.[2] Vestpro claims that the trial court improperly found that Tuck-it-away was entitled to the $100,000 as liquidated damages for Vestpro's default in performance of the contract of sale. We affirm the judgment of the trial court.

The parties stipulated to the following facts. On or about April 13, 1988, Tuck-it-away, as seller, and Vestpro, as buyer, signed a contract for the sale of real property located in Bridgeport. Pursuant to the contract, Vestpro deposited $100,000 in escrow with Tuck-it-away's attorneys, Pullman, Comley, Bradley and Reeves.[3] This is the money presently in dispute between

in connection with the underlying real estate transaction here in dispute. The plaintiff sought and was granted an interlocutory judgment requiring the defendants to interplead concerning their claims to the funds so that the court could order the plaintiff to give the funds to the proper party and be released of any further obligations or liabilities to Vestpro.

[2] Paragraph 15 of the contract provided in pertinent part: "If the buyer fails to perform the terms of this contract, seller shall be entitled to retain all sums theretofore paid as provided in Sections 2 and 8 hereof which sums, to the extent held in escrow hereunder, shall be released from escrow and thereupon paid to the seller together with any accrued and unpaid interest thereon, as liquidated damages for loss of a bargain and not as a penalty. . . ."

[3] As previously stated, Pullman, Comley, Bradley and Reeves commenced this interpleader action as escrowee of the disputed funds. Once the trial court granted the interlocutory judgment requiring Vestpro and Tuck-it-away to interplead their claims to the funds, Pullman, Comley, Bradley and Reeves represented Tuck-it-away in this action. Such representation was permitted by paragraph 19 (c) (ii) of the contract of sale, which provided, in pertinent part, that if a dispute arises as to who is entitled to the funds and no agreement can be reached between the parties, "then the escrowee shall have the right to pay and deliver the deposit into the Superior Court for Fairfield County, Connecticut, and interplead seller and buyer in respect thereof, and thereupon the escrowee shall be discharged of any obligations in connection with this agreement, and shall be permitted to represent seller in connection with the subject matter of this agreement, including, without limitation, any dispute in regard to the deposit, as escrowee is seller's counsel."

the parties. By correspondence dated October 14, 1988, Tuck-it-away and Vestpro agreed in writing to extend the closing date until December 10, 1988.

On December 10, 1988, a Saturday, no closing took place. On or about December 14, 1988, Tuck-it-away received from Vestpro a letter purporting to cancel the contract on the basis of three alleged title defects: (1) a lis pendens dated August 9, 1983, (2) a certificate of attachment dated June 27, 1988, and (3) a three foot nonconformity in one of the lengths in the legal description of the property as referenced in the contract.

Before December 10, 1988, Tuck-it-away's attorneys had in their possession a release of the August 9, 1983 lis pendens and a release of the June 27, 1988 attachment. At the time of execution of the contract, neither Tuck-it-away nor Vestpro was aware that the legal description contained an incorrect length. On or about September 16, 1988, attorneys for both Tuck-it-away and Vestpro received a survey from Preferred Land Title Services, Inc., showing a correct legal description of the property. At no time prior to the December 12, 1988 letter did Vestpro ever advise Tuck-it-away or complain to Tuck-it-away about the error in the legal description of the property contained in the contract.

In addition to these stipulated facts, other facts necessary to a resolution of this matter can be summarized as follows. The total purchase price due under the contract was $1,900,000. The contract provided that the closing date would be 120 days from the date of execution of the contract, but that Vestpro could obtain four extensions of time upon payment to Tuck-it-away of $15,000 for each extension. Because Vestpro exercised all four rights of adjournment, the actual closing date was December 10, 1988. The contract provided that time was of the essence.

As December 10 approached, Vestpro was short of the total funds necessary to complete the deal. On December 7, 1988, Alan Goldman, one of Vestpro's principals, met with Gerald Sprayragen, Tuck-it-away's president, to discuss the situation. At that meeting, Goldman indicated that Vestpro did not yet have the total funds necessary, but that it was close to attaining its goal, and optimistic that it would reach its goal, but that a further extension of time was needed. Although the express contractual language did not permit another extension, Sprayragen indicated that he would permit another extension if Vestpro would pay a fee for the extension. Vestpro refused to pay for a further extension, and as a result no agreement for an extension came from this meeting. Sprayragen also spoke with Stephen Hochman, a partner in Vestpro whose job was to solicit investors. He too indicated to Sprayragen that Vestpro was unable to close on December 10 and needed an extension of the closing date.

During that week, Michael Proctor, an attorney who represented Tuck-it-away in this deal, spoke with Gary Kleinman, an attorney who represented Vestpro in its negotiations and dealings with Tuck-it-away. Kleinman told Proctor that Vestpro would not be able to close on December 10 and needed another two weeks to secure the remaining funds. It thus was clear to Tuck-it-away that Vestpro would not be able to close the deal on December 10, 1988.

On December 9, 1988, Vestpro representatives met with their prospective investors to discuss the situation. During the meeting, the group received a call from Kleinman, who told the group "You got lucky" because he had discovered a discrepancy in one of the courses in the property description.[4] As a result of this informa-

---

[4] Kleinman testified: "I said I found something. I was looking for a hook, if you will, to buy some time, and I conveyed to them I thought I had found something. I was going through the contract and the survey and things like that."

tion, Vestpro decided to send a letter to Tuck-it-away electing to cancel the contract under its provisions because of Tuck-it-away's inability to convey title to the premises in accordance with the terms of the contract.[5] The letter represented to Tuck-it-away that Vestpro elected to cancel the contract because of the three alleged defects in title previously discussed.[6] The letter was not mailed to Tuck-it-away until the end of the day on December 12, 1988, and Tuck-it-away did not receive the letter until December 14, 1988.

Vestpro argues that because Tuck-it-away's failure was not excused by an anticipatory breach by Vestpro, Vestpro was not in default and thus was entitled to a return of its deposit by reason of its letter of cancellation. Vestpro also argues that the trial court improperly found Vestpro in default for failing to appear for the closing on December 10, 1988. Vestpro claims that this finding was improper because Tuck-it-away also failed to appear for the closing and tender title to the property.

We begin our analysis of Vestpro's claim by noting that the trial court's detailed memorandum of decision contains all of the necessary subordinate findings to support the conclusion that Vestpro had anticipatorily breached the contract as claimed at trial by Tuck-it-away, even though it did not, in fact, use the talismanic words "anticipatory breach."

---

[5] Paragraph 11 of the contract provided in pertinent part: "If the seller shall be unable to convey title to the buyer at the closing, or adjourned closing, in accordance with the terms of this contract, the buyer shall have the option of . . . (b) canceling this contract . . . ."

[6] At trial, one of Vestpro's claims was that Tuck-it-away was, in fact, the party in breach because of these alleged defects in title. The trial court ruled against Vestpro on this claim, finding that either the defect was minor, or was curable by December 10, 1988, and concluded that "there was no basis for Vestpro's claim that Tuck-it-away's title was defective." Because the defendant does not challenge these factual findings of the trial court, we need not address them in this opinion.

Vestpro argues, however, that if the trial court did find that it anticipatorily breached the contract, that finding was clearly erroneous because it had no basis in the evidence presented. "An anticipatory breach of contract occurs when the breaching party repudiates his duty before the time for performance has arrived. *Martin* v. *Kavanewsky,* 157 Conn. 514, 518–19, 255 A.2d 619 (1969); *Koski* v. *Eyles,* 37 Conn. Sup. 861, 862, 440 A.2d 317 (1981). Its effect is to allow the nonbreaching party to discharge his remaining duties of performance, and to initiate an action without having to await the time for performance. *Martin* v. *Kavanewsky,* supra." *McKenna* v. *Woods,* 21 Conn. App. 528, 532, 574 A.2d 836 (1990). "The manifestation of intent not to render the agreed upon performance may be either verbal or nonverbal; *White* v. *Finch,* 3 Conn. Cir. Ct. 138, 142, 209 A.2d 199 (1964); and is largely a factual determination in each instance." *Koski* v. *Eyles,* supra, 863.

Here, the trial court, in its memorandum of decision, stated that "it was Sprayragen's testimony that he knew there would be no closing on December 10, 1988, and, further, that no request from Vestpro for a closing either on December 10 or December 12 was ever received." The trial court also stated: "Based on conversations with Gary Kleinman, attorney for Vestpro, it was Proctor's clear understanding that Vestpro would be unable to close and was depending on an adjournment and relying on financing to complete at some vague future date." The trial court found no merit in Vestpro's apparent claim that it could have closed on December 10, 1988. Furthermore, the court stated that "the issues are found in favor of Tuck-it-away, Bridgeport, Inc., as against Vestpro Corporation. . . . It is further found that Vestpro Corporation was in default under the terms of said contract."

Although Vestpro presented evidence and testimony that denied that any of its representatives told Tuck-it-away's representatives that it would not be able to close on December 10, the trial court found the facts in favor of Tuck-it-away and stated that it had "difficulty in finding any legal basis to accord validity to Vestpro's claims." "When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Cupina* v. *Bernklau,* 17 Conn. App. 159, 161, 551 A.2d 37 (1989). " '[T]he trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony.' " *Cupina* v. *Bernklau,* supra, 162. "On appeal, the function of this court is limited solely to the determination of whether the decision of the trial court is clearly erroneous. . . . This court cannot find fact or draw conclusions from primary facts found, but can only review such findings to determine whether they could have legally, logically and reasonably been found by the trier." (Citations omitted.) *Robertson* v. *Nationwide Mutual Ins. Co.,* 20 Conn. App. 635, 637, 569 A.2d 565 (1990).

We have reviewed the record in this case and conclude that the trial court's findings supporting the conclusion that Vestpro had anticipatorily breached the contract are sufficiently supported by the evidence presented. Sprayragen and Proctor testified that during the week of December 5, the Vestpro representatives had stated that they would not be able to close on December 10, 1988. Such statements are clear and unequivocal manifestations of Vestpro's inability to close on December 10. Furthermore, it is obvious from the trial court's memorandum of decision that it did not

believe the testimony of Vestpro's witnesses that they never told Tuck-it-away that they would not be able to close on December 10. For example, the court sarcastically characterized as "cute" Goldman and Kleinman's testimony that they never told any of Tuck-it-away's representatives that Vestpro would not or could not close on the closing date.

The trial court also found that Vestpro breached its duty to perform by not showing up at the closing on December 10 and tendering full payment of the purchase price, and that such a breach excused Tuck-it-away from its obligation to perform.

With respect to the time for performance of obligations contained in a contract, the general rule is: "Where all or part of the performances to be exchanged under an exchange of promises can be rendered simultaneously, they are to that extent due simultaneously, unless the language of the circumstances indicate the contrary." 2 Restatement (Second), Contracts § 234 (1). Here, paragraph 4 of the contract provided: "At the closing, *on payment of the purchase price as provided above,* the seller shall deliver and the buyer shall accept, a full covenant Warranty deed . . . ." This language indicates that the parties agreed that the performances would not be rendered simultaneously, but rather that Vestpro's duty to perform would be a condition precedent to Tuck-it-away's obligation to tender and convey title.

"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance." *Lach* v. *Cahill,* 138 Conn. 418, 421, 85 A.2d 481 (1951). " 'Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in light of the circumstances surround-

ing the execution of the instrument.' *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 149, 328 A.2d 711 (1973); *Lach* v. *Cahill,* supra." *Christophersen* v. *Blount,* 216 Conn. 509, 512, 582 A.2d 460 (1990).

The express language of paragraph 4 of the contract evidences the parties' intent that Vestpro's duty to tender full payment of the purchase price is a condition precedent of Tuck-it-away's obligation to convey title to Vestpro. Because Vestpro failed on December 10, 1988, to tender the $1,800,000 balance due on the purchase price, Tuck-it-away was excused of its obligation to perform under the contract.

Vestpro argues, however, that Tuck-it-away's failure to go through the act of tendering a deed to the nonappearing buyer placed it in default and thus precluded it from recovering the $100,000 as liquidated damages. The law, however, does not require a party to undertake a futile act. *Luttinger* v. *Rosen,* 164 Conn. 45, 47, 316 A.2d 757 (1972); *Vachon* v. *Tomascak,* 155 Conn. 52, 57, 230 A.2d 5 (1967); *Tracy* v. *O'Neill,* 103 Conn. 693, 699, 131 A. 417 (1925). Because Vestpro failed to appear at the closing and perform its obligation, which was a condition precedent to Tuck-it-away's obligation to perform, it would have been an act in futility for Tuck-it-away to tender a deed to Vestpro. We will not require the seller in this situation to perform such a futile act.

We conclude that the trial court's factual findings were adequately supported by the record. The trial court, therefore, correctly awarded the $100,000 deposit to Tuck-it-away.

The judgment is affirmed.

In this opinion the other judges concurred.