[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Factual and Procedural Background
CT Page 11733
By way of an amended complaint dated October 5, 1994, the plaintiff, Tolland Enterprises, brought a three count action against the defendant, Scan-Code, Inc. The first count alleges a breach of lease; the second count alleges a breach of an accord and satisfaction; and the third count alleges unjust enrichment.
The defendant filed an amended answer, four special defenses, and a counterclaim, dated July 14, 1994, and granted by the court on August 3, 1995. The special defenses claimed an accord and satisfaction, breach of contract, voidable contract, and plaintiff's failure to state a claim upon which relief may be granted. The counterclaim alleged breach of contract.
Trial to the court commenced on August 3, 1995, and completed on August 4, 1995. During the course of trial the plaintiff called the following witnesses: Ronald J. Gross, plaintiff's Chief Financial Officer and Nicholas Morizio, a real estate broker. The defendant called Henry Beckenstein, the only living general partner in Tolland Enterprises; Robert Beckenstein, manager of Tolland Enterprises; and Robert Geckle, President and Chief Executive Officer of Scan-Code. The plaintiff recalled Ronald Gross and Robert Beckenstein for rebuttal purposes.
At the conclusion of evidence, the court ordered both parties to file simultaneous briefs and proposed findings of fact on or before the close of business, August 25, 1995.
II. Discussion
A. Findings of Fact
From the testimony and exhibits presented at trial, the court finds that the plaintiff, Tolland Enterprises, is a Connecticut general partnership which owns, manages, and leases commercial real estate. Its sole living partner is Henry Beckenstein. His son, Robert Beckenstein, is the partnership's day-to-day manager who had the authority to negotiate contracts and bind the partnership to such contracts, provided that Henry Beckenstein's input was required for modification and/or restructuring of leases. Until September of 1994, Robert Beckenstein was also a director and officer of the defendant corporation. CT Page 11734
The defendant, Scan Code, Inc., is a Connecticut corporation which manufactures mail sorting equipment and provides pre-sort mail services and address correction services. Scan-Code was previously solely owned by Michael Strange and Henry Beckenstein. These two individuals had prior business relationships. (Exhibits, Plaintiff's 8A and 8B)
The plaintiff as lessor and the defendant as leasee signed a commercial lease on June 28, 1991, for a sixty month term. (Exhibit, Plaintiff's 1) This lease was a substitute lease for a prior lease arrangement between the same parties.
In February of 1994, Robert Geckle, on behalf of the defendant, and Robert Beckenstein, on behalf of the plaintiff, began discussions regarding restructuring the lease relationship. At that time back rent was due to the plaintiff from the defendant in an approximate amount of $245,000.00. (Exhibit, Plaintiff's 6) Payment of this back rent was of primary importance to the plaintiff. In addition, the plaintiff wanted to continue some type of lease arrangement with the defendant. The defendant did not feel that the space it was currently renting from the plaintiff was appropriate to its needs. The defendant did tell the plaintiff that plaintiff's property located at 265 Prestige Park Road would be appropriate for the defendant's pre-sort operation.
On April 26, 1994, Mr. Robert Geckle facsimiled handwritten terms in response to a facsimile letter from Robert Beckenstein. Those terms stated:
 1. $116,000.00 to be paid during week of May 9, 1994.
 2. May rent of $15,461.67 paid week of May 23, 1994.
 3. Balance of approximately $115,000.00 paid in equal monthly installments over 12 months beginning June, 1994;
 4. New landlord/tenant relationship begins June, 1994. To be finalized during next four weeks. CT Page 11735
(Exhibit, Defendant's A)
Robert Beckenstein discussed these terms with his father and told Robert Geckle that the terms set forth were "acceptable". Prior to leaving on an out-of-town business trip, Robert Beckenstein called Robert Geckle and instructed him to make sure the $116,000.00 was delivered before the end of business that day. Robert Geckle rediscussed the April 26, 1993, terms of the agreement with Robert Beckenstein at that time.
A check in the amount of $116,000.00 was hand-delivered by the defendant to the plaintiff's office on May 13, 1994, with an attached letter which provided:
 1. Scan Code will pay May rent of $15,461.67 during the week of May 23, 1994.
 2. Balance due Tolland/Beckenstein Enterprises of approximately $115,000.00. It will be paid in equal monthly installments over 12 months beginning June, 1994.
 3. Scan Code will be released from its current lease at 130 Prestige Park Road. Effective June 1, 1994.
(Exhibit, Plaintiff's 5)
Defendant also indicated in that letter that it intended to move its pre-sort operations to 265 Prestige Park Road when a mutually agreeable lease could be finalized. The defendant stated that it would continue to occupy and pay rent at the 130 Prestige Park Road facility under the terms of the lease for those premises. The letter ended with the following statement: "Acceptance of the enclosed payment signifies acceptance of the above agreed upon items." (Exhibit, Plaintiff's 5)
The plaintiff endorsed the check, deposited and cashed the check without any protest or reservation of rights. Subsequently, Robert Beckenstein returned from his business trip, reviewed defendant's letter, and on May 23, 1994, called Robert Geckle and told him that the plaintiff would not honor the terms of the May 13, 1994, letter. Robert Beckenstein did not read the May 13, 1994, letter prior to the check being deposited. CT Page 11736 He would have deposited the check and kept the defendant's money even if he had read the letter.
By letter dated May 27, 1994, defendant sent plaintiff a letter indicating defendant's suspension of its performance in light of plaintiff's decision not to honor the terms of the April 26 and May 13, 1994 agreements. (Exhibit, Defendant's C)
B. Burden of Proof, Generally
In the usual civil case, a party satisfies its burden of proof if the evidence presented establishes the issue in favor of that party by a "fair preponderance of the evidence".Vigorito v. Allard, 143 Conn. 70, 71 (1955). "Fair preponderance" means the better or weightier evidence; a party is not required to prove a fact to an absolute certainty but merely to prove that a fact is more likely than not to be true. TerminalTaxi Co. v. Flynn, 156 Conn. 313, 318 (1968). Such preponderance is not judged by the number of witnesses but rather the quality of the evidence presented. Verdi v. Donohue, 91 Conn. 448,450 (1917).
Just as the plaintiff at bar must prove its case by this fair preponderance of evidence standard, so too must the defendant prove every essential element of any special defense and/or counterclaim by a fair preponderance of the evidence.Marley v. New England Transportation Co., 133 Conn. 586, 590
(1947).
"[I]f the evidence on a particular issue [is] in balance or equipoise, the party on whom the burden of proof rests on that issue [will have] failed to sustain its burden of proof." Bergmann v. Newton Buying Corporation, 17 Conn. App. 268,272 (1989).
1. Accord and Satisfaction
The threshold issue which the court must decide is whether the parties entered into an accord and satisfaction, defendant's first claimed special defense. Our courts have recognized that accord and satisfaction should be specially pleaded. Atchison v. Atchison, 67 Conn. 35, 37 (1895). If the court finds a valid accord and satisfaction, the plaintiff's first and third claims, breach of lease and unjust enrichment would fail. The plaintiff's second claim, breach of accord and CT Page 11737 satisfaction, need not be dealt with until the court determines the validity or lack thereof of defendant's accord and satisfaction defense.
"The defense of accord and satisfaction requires the defendant to allege and prove a new contract based upon a new consideration which must be offered by the debtor and accepted by the creditor with intent to satisfy the whole claim, and that such will be the effect of its acceptance must be made known to the creditor in some unmistakable manner so that he is bound to understand that if he takes it he takes it in full satisfaction of his claim." Keller v. Rohde, 109 Conn. 244
(1929), citing Crucible Steel Co. v. Premier Mfg. Co., 94 Conn. 652
(1920) and Hanley Co., Inc. v. American Cement Co.,108 Conn. 469 (1928).
To constitute such an accord and satisfaction, "it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered, is bound to understand therefrom, that if he takes it he takes it subject to such condition. Crucible,
supra at 656.
The discharge of the debt through accord and satisfaction occurs when the debtor renders performance different from that allegedly due to his creditor and the creditor accepts the substituted performance in full satisfaction of the disputed claim. Gilreath v. Sentry Ins. Co., 38 Conn. Sup. 422
(1982). It is clearly recognized in Connecticut that an accord and satisfaction is formed when the creditor keeps the money.Hanley, supra at 472.
In the case before this court the testimony showed that there was back rent due from the defendant to the plaintiff in an amount approximating $215,000.00.[1] Witnesses for both parties testified that Robert Beckenstein and Robert Geckle for the plaintiff and the defendant respectively had many meetings and discussions regarding possible ways to pay the back rent and accommodate the defendant regarding different leased premises.
Subsequent to these meetings and discussions, the plaintiff sent a written inquiry to the defendant regarding CT Page 11738 terms for settlement of the parties' respective concerns. (Exhibit, Defendant's A) The defendant responded by handwritten note of the same date. (Exhibit, Defendant's A) The terms included a payment of $116,000.00 during the week of May 9, 1994. (Exhibit, Defendant's A) Robert Beckenstein called Robert Geckle on May 13, 1994, regarding the payment of the $116,000.00. Mr. Geckle informed Mr. Beckenstein that it would be delivered to Mr. Beckenstein's office that afternoon, and Mr. Geckle testified that he reviewed with Mr. Beckenstein the terms under which the $116,000.00 was being paid. Those oral terms had previously been put in writing by the defendant (Exhibit, Defendant's A) and were reiterated in writing at the time the defendant delivered the check for $116,000.00 to the plaintiff. By letter dated May 13, 1994, the defendant specifically set out the terms of agreement:
1. the check for $116,000.00;
 2. terms for the balance of approximately $115,000.00;
 3. defendant's release and date of release from its lease;
 4. defendant's intention to relocate its pre-sort operations to another of plaintiff's properties; a relocation of defendant's other facilities elsewhere; and
 5. payment of use and occupancy until relocation completed. (Exhibit, Plaintiff's 5)
The most significant language of this document specified: "Acceptance of the enclosed payment signifies acceptance of the above agreed upon items." (Exhibit, Plaintiff's 5)
The plaintiff endorsed and deposited "the enclosed payment" in the amount of $116,000.00. On May 18, 1994, counsel for the defendant facsimiled documents to the plaintiff which memorialized the promissory note, a mutual release and a short term lease agreement between the parties; in essence, all the documents necessary to complete the paperwork outlined in defendant's letter of May 13, 1994. (Exhibit, Defendant's B) Subsequent to doing that, the plaintiff told the defendant that it was not in agreement with the terms of the May 13, 1994 letter, CT Page 11739 and there was "no deal". Once notified of the defendant's position, defendant's counsel notified the plaintiff that it would not be carrying out the other terms of the May 13th agreement since the plaintiff had reneged on it. (Exhibit, Defendant's C)
In this case the defendant debtor made an offer to the plaintiff creditor. The offer included a check for $116,000.00 with other conditions attached to it. The intent of the debtor's offer was to satisfy the whole claim. The defendant let the plaintiff know that if the plaintiff accepted the check, it accepted all the terms as set out by the defendant in settlement of the debt. See Keller, supra. Plaintiff's offer was made to the defendant with a clear declaration that if the money was accepted, it was accepted subject to the conditions specified. Crucible, supra at 656. Defendant's performance was different from the performance originally due to the plaintiff. Gilreath, supra.
There is no question that the plaintiff cashed the check for $116,000.00. It is this court's determination that the plaintiff's acceptance of defendant's check was an accord and satisfaction. Hanley, supra at 472-473. This court is not persuaded by plaintiff's contention that Mr. Beckenstein did not see defendant's letter with the terms until after the check had been deposited by his staff in his absence, and therefore, plaintiff was not bound by the terms of the offer. This is especially true in light of Mr. Beckenstein's own testimony that he would have cashed the check and kept the money even if he had read defendant's letter; "it was money owed to him". Finally, this court is similarly not persuaded by plaintiff's argument that there could not be an accord and satisfaction because the lease language prohibits such an accord and satisfaction. (Plaintiff's brief, pp. 13-14) All elements of a valid accord and satisfaction have been met in this case and the plaintiff fails to cite any authority which would negate its validity in light of the lease's language.
Since this court finds that there is a valid accord and satisfaction, plaintiff's claims regarding breach of lease and unjust enrichment must fail. The plaintiff lost its right to make such claims when it cashed the defendant's check. As previously stated, ". . . a contract [of accord and satisfaction] is often initiated by the debtor, who offers an accord by tendering a check as `payment in full' or `in full satisfaction'. CT Page 11740 If the creditor knowingly cashes such a check, or otherwise exercises dominion over it, the creditor is deemed to have assented to the offer of accord." County Fire Door Corporationv. C.F. Wooding Co., 202 Conn. 277, 281 (1987). This court finds that the defendant proved its special defense of accord and satisfaction by a fair preponderance of the evidence.
2. Breach of an accord and satisfaction
In its amended complaint, the plaintiff alleges that if an accord and satisfaction existed between the plaintiff and the defendant, the defendant breached the terms of the accord and satisfaction. The court does not find plaintiff's claim persuasive. Once the plaintiff cashed the defendant's check, an accord and satisfaction was validated. Defendant then tried to proceed with the terms of the accord and satisfaction (Exhibit, Defendant's B) and was prohibited from doing so. Plaintiff refused to perform and so informed the defendant. At that point in time, the defendant had no choice but to discontinue any further attempts at performance and notified the plaintiff accordingly. (Exhibit, Defendant's C)
This court is in full agreement with defendant's position: when the plaintiff repudiated the accord and satisfaction, the defendant was excused from performance. See Pullman,Comley, Bradley Reeves v. Tuck-it-away, Bridgeport, Inc.,28 Conn. App. 460, 465 (1992). As soon as the plaintiff told the defendant that "there was no deal", the defendant was discharged from any obligation it might have had to perform. Martinv. Kavanewsky, 157 Conn. 514, 518-519 (1969). The plaintiff, Tolland Enterprises, can not accept the defendant, Scan-Code Inc.'s check, cash it, repudiate the agreement upon which the check was conditioned, and then claim that Scan-Code breached the agreement by not performing under it. Accordingly, this court rejects the defendant's second count, breach of an accord and satisfaction.
3. Defendant's Remaining Special Defenses and Counterclaim
Since this court has found defendant's special defense of accord and satisfaction to be a valid one, there is no need for this court to evaluate any of the plaintiff's additional special defenses and this court declines to do so.
The defendant also filed a counterclaim against the CT Page 11741 plaintiff alleging breach of contract. Defendant claims that the accord and satisfaction constituted a new contract and the plaintiff breached the terms of that contract by failing to perform. This court has already held that there was a valid accord and satisfaction between the parties. This court has also previously held that the plaintiff failed to recognize this new contract and to this extent, such a failure could constitute a breach of the plaintiff's part. However, aside from some general testimony from Robert Geckle regarding lost profits and lost sales, there was no concrete evidence before this court to establish damages. Defendant's breach merely reiterates this general testimony which was the only evidence introduced to support defendant's counterclaim.
On this basis, while this court acknowledges that plaintiff's failure to perform the terms of the accord and satisfaction after taking defendant's check, rises to the level of a breach of contract, the plaintiff is not entitled to any damages as there was no concrete evidence offered to prove the same.
4. Plaintiff's Claim for Attorney's Fees
The plaintiff submitted three affidavits regarding attorney's fees. The first requested attorney's fees in relation to the prosecution of this action; the second requested attorney's fees in relation to the prosection of an appeal related to the instant action; and the third requested attorney's fees in relation to the summary process action which the plaintiff ultimately filed against defendant.
Since this court found against the plaintiff on all three counts of its underlying complaint, plaintiff is not entitled to an award of attorney's fees in relation to either its first or second request.
Plaintiff's third request involves the summary process action. The lease between the parties includes language in Article XIII regarding attorney's fees "actually paid in obtaining and reletting the Premises". (Exhibit, Plaintiff's 8A) The lease contains additional language in Article XXV relating to fees and expenses as well and states in pertinent part: "If Tenant shall default in the observance or performance of any term on Tenant's part to be observed or performed hereunder, [including] . . . fails to make any payment of Minimum CT Page 11742 Rent", the landlord has the ability to institute suit and the tenant becomes obligated to pay attorney's fees.
The parties did stipulate to judgment in the summary process action on August 17, 1994. That stipulation in TollandEnterprises v. Scan-Code, Inc., Docket No. CV-H-9406-76348 did not waive plaintiff's claim to request attorney's fees from this summary process action. The court has reviewed plaintiff's request for fees which totals $4,102.50. This court finds the sum of $3,500.00 to be a reasonable fee for the legal work involved in the summary process action and awards the amount of $3,500.00 to be paid by the defendant to the plaintiff for attorney's fees.
III. Conclusion
This court holds in favor of the defendant, Scan-Code, Inc., as to its special defense of accord and satisfaction. In light of this determination, the plaintiff's, Tolland Enterprises, claims of breach of contract and unjust enrichment fail. This court further finds in favor of the defendant and against the plaintiff as to plaintiff's final claim, breach of an accord and satisfaction. It was the plaintiff's own repudiation of the accord and satisfaction which prevented the defendant from performance, not any voluntary act on the part of the defendant.
Having determined that the defendant's special defense of accord and satisfaction is a valid one, the court did not need to consider defendant's other three special defenses raised and chose not to. The court holds that while defendant's counterclaim that plaintiff breached the accord and satisfaction has merit, the court awards no damages to the defendant for the breach. The court finds no evidence, beyond the general testimony of one witness, of any specific damages.
This court awards attorney's fees to the plaintiff payable by the defendant on the summary process action only in the amount of $3,500.00.
SUSAN B. HANDY JUDGE, SUPERIOR COURT