[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
INTRODUCTION
The complaint in this case contains nine counts. They allege, in essence, that the plaintiff was wrongfully discharged from her employment by the defendant Yale University ("Yale"), was discriminated against on the bases of age and sex and suffered emotional distress as a result of the negligent and intentional acts of Yale and of the defendant Robert Gifford.[1] The defendants have moved for summary judgment on all counts on the ground that the plaintiff failed to exhaust administrative remedies available to her under Yale's employee handbook.
FACTS
The pleadings, the affidavits submitted in support of and in opposition to this motion and the stipulations of counsel establish the following facts:
1. The plaintiff had been employed by Yale's School of Medicine for eighteen years, when she was advised that her office was to be reorganized, her position was to be eliminated and she was to be discharged;
2. Before being so advised, the plaintiff had received from Yale an employee handbook ("handbook"), § 800 (all further section references are to the handbook) of which states in part:
In the normal course of working together, people may CT Page 1470 experience occasional misunderstandings or problems. The University is committed to giving employees fair and consistent treatment and providing a procedure for prompt consideration of their complaints. Employees are encouraged to use this procedure and may do so without fear of reprisal or prejudice.
3. The handbook goes on to state that an employee can complain about matters to his or her supervisor, and if the employee is unsatisfied with the supervisor's response, the employee can then file a grievance with Yale;
4. On September 17, 1998, the plaintiff met with a representative of Yale's Human Resources Department to discuss the upcoming elimination of her position;
5. Sometime in December 1998, the plaintiff was discharged by Yale;
6. On December 15, 1998, the plaintiff filed a grievance ("grievance") with Yale concerning the reorganization of her office and her discharge;
7. Section 802.2 calls for mediation of grievances, and if mediation is not successful, it goes on to provide:
 The Human Resources administrator will notify the grievant and the respondent within two weeks after receipt of the grievance form either to outline the settlement reached or to indicate that no reconciliation appears feasible. This time limit and any subsequently cited are expected to be observed in order to ensure that the matters raised are addressed promptly; however, in some instances, additional time may be required for fact-finding because of the complexity of the case or the unavailability of parties or witnesses. Where a time limit is extended, the grievant and the respondent will be informed.
8. Section 803 authorizes employees who are dissatisfied with Yale's proposed resolution of a grievance to compel Yale to convene a panel of three persons (to be selected from a nine member Review Committee, each member of which is a Yale employee who is appointed to the Review Committee by the President of Yale) to hear the grievance; CT Page 1471
9. Yale did not communicate with the plaintiff concerning the grievance from the time it was filed on December 15, 1998 until March 8, 1999, when the plaintiff was advised that she could require Yale to convene a panel ("panel") to hear the grievance pursuant to § 803;
10. Yale did not provide to the plaintiff notice of any extensions of the timelines established by § 802.2;
11. Section 803.5 states: "The Panel's resolution shall be binding on the University";
12. The handbook does not state that the panel's resolution shall be binding on employees;
13. The handbook does not provide that an employee who is unsatisfied with a panel's decision may compel resolution of the dispute by binding arbitration by a neutral;
14. The handbook does not state that an employee's right to grieve is in lieu of the right to sue;
15. Section 801, entitled "Grievable Issues," provides, in relevant part:
 Professional assessments and judgments of supervisors concerning such issues as performance evaluations, salary and grade classification determinations, and the staffing or organization of a department or allocation of its resources are not subject to review under this procedure, unless it is alleged that the professional assessment or judgment resulted from unlawful discrimination. A grievance panel may have to inquire into the procedure by which a professional judgment was made in reviewing a complaint, but the panel may not substitute its own judgment for that of the respondent.
DISCUSSION
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Milesv. Foley, 253 Conn. 381, 385, 752 A.2d 503 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of CT Page 1472 substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Id., 386.
The defendants have moved for summary judgment "because of the plaintiff's failure to exhaust the administrative remedies available to her." (Motion for Summary Judgment, p. 1.) Exhaustion of remedies is a doctrine which originally developed in the public sector, where, typically, a statute or regulation provides an administrative dispute resolution scheme ("ADR") as an alternative to suit, or which must be navigated as a condition precedent to bringing suit. See, e.g., General Statutes § 46a-82 (establishing procedure for filing discriminatory practice claims); General Statutes § 31-294c (establishing procedures for filing workers' compensation claims); General Statutes § 8-7
(establishing procedure for appealing zoning decisions). "It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before a [court will] obtain jurisdiction to act in the matter. . . . [W]here a statute has established a procedure to redress a particular wrong, a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Citations omitted; internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities ServiceCo., 254 Conn. 1, 11-12, 756 A.2d 262 (2000).
In the private sector, the exhaustion doctrine exists where a contract, either expressly or impliedly, establishes an ADR scheme which either preempts suit or must precede it. An agreement to subject disputes arising out of a contract to binding arbitration is a common example of such a scheme. Where an employment contract contains an ADR procedure, our Supreme Court has held that an employee must at least attempt to exhaust that procedure before resort to the courts is permitted. See Huntv. Prior, 236 Conn. 421, 431, 673 A.2d 514 (1996); Labbe v. PensionCommission, 229 Conn. 801, 811, 643 A.2d 1268 (1994).
The parties have stipulated that the employee handbook in the present action constitutes a contract. The issue, therefore, is whether that handbook creates mandatory ADR as a substitute for, or as a condition precedent to, suit.
Exclusive Remedy
Section 800, entitled "Staff Grievance Policy", is the preamble to subsequent sections of the handbook which detail grievance procedures. Section 800 provides that "employees are encouraged" to use the procedure, and that they "may do so without fear . . ." "Encouraged" and CT Page 1473 "may" are not words of compulsion. Rather, they suggest an option, and to construe their intent to be mandatory, rather than permissive, would be a subversion of their clear meaning. "[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties. . . . When the intention conveyed by the terms of an agreement is clear and unambiguous, there is no room for construction. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." (Citations omitted; internal quotation marks omitted.) Levine v. Massey,232 Conn. 272, 277-79, 654 A.2d 737 (1995).
The conclusion that § 800, and subsequent provisions, create an apparatus which is available to employees at their option is reinforced by the fact that § 803.5 provides that the decision of a panel is binding on Yale, but does not provide that such a decision is similarly binding on an employee. The obvious inference is that an employee has the option of accepting a panel's decision, or of going on to litigate the disputed issue. In the court's mind, an employee's right to reject a panel's decision fits comfortably with an employee's right to ignore the whole scheme and to resort to the courts ab initio.
Anticipatory Breech
As the stipulation of the parties establishes, Yale did not respond to the grievance in the manner prescribed by the handbook. Assuming,arguendo, that employees are obligated to go through the handbook's ADR scheme, there remains for the trier the question of whether Yale's failure to follow the handbook's system excused the plaintiff from continuing thereafter to follow that scheme. "An anticipatory breach of contract occurs when the breaching party repudiates his duty before the time for performance has arrived. . . . Its effect is to allow the nonbreaching party to discharge his remaining duties of performance, and to initiate an action without having to await the time for performance. . . . The manifestation of intent not to render the agreed upon performance may be either verbal or nonverbal . . . and is largely a factual determination in each instance." (Citations omitted; internal quotation marks omitted.) Pullman. Etc. v. Tuck-it-away. Bridgeport,28 Conn. App. 460, 465, 611 A.2d 435 (1992). Whether an anticipatory breach has occurred is largely a question of fact for the trier, and so summary judgment is inappropriate in this case.
Applicability of ADR to Plaintiff's Claims
CT Page 1474
While courts favor ADR, they closely scrutinize contracts which call for ADR in order to determine whether a particular dispute is of the genre which the parties have contracted to submit, exclusively, to ADR. As the Appellate Court noted recently in a case involving the arbitrability of a dispute, "[a]lthough the courts of this state encourage arbitration as a means of alternative dispute resolution, there are limits to this policy. Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . No one can be directed to arbitrate a dispute who has not previously agreed to do so." (Citations omitted; internal quotation marks omitted.) Scinto v. Sosin, 51 Conn. App. 222, 227, 721 A.2d 552, (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999).
As noted above, § 801, titled "Grievable Issues", expressly exempts from the grievance process "professional assessments and judgments of supervisors concerning such issues as performance evaluations" as well as "the staffing or organization of a department or allocation of its resources." Whether the subject of the plaintiff's grievance falls within either of these exemptions is, at the least, a question of fact for the trier, and therefore not susceptible of summary adjudication.
CONCLUSION
The defendants' motion for summary judgment is accordingly denied.
G. Levine, J.